**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| TABITHA FULTON,<br><br>Plaintiff,<br><br>v.<br><br>CAPITAL MANAGEMENT SERVICES, L.P., et al.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | 2:22-cv-00823 |

**OPINION**

**Mark R. Hornak, Chief United States District Judge**

Plaintiff Tabitha Fulton claims that Defendants Capital Management Services, L.P. and Center One, LLC failed to pay her—and other employees like her—appropriate wages for certain hours worked. Specifically, Plaintiff alleges that Defendants required employees to log on to company systems prior to the start of their shifts but did not fully compensate employees for this time. Plaintiff claims that this policy violates the Fair Labor Standards Act ("FLSA"), the Pennsylvania Minimum Wage Act, and the Pennsylvania Wage Payment and Collection Law.

Two motions are currently pending before the Court. Plaintiff moves for "conditional certification" of a collective action under Section 16(b) of the FLSA (i.e., 29 U.S.C. § 216(b)), (ECF No. 86), and Defendants move for relief from the Court's Order at ECF No. 66, which tolled the statute of limitations for the FLSA action until lifted by subsequent court order, (ECF No. 83).

For the reasons discussed below, Plaintiff's Amended Motion for FLSA Conditional Collective Action Certification and Judicial Notice (ECF No. 86) will be granted in part and

denied in part, and Defendants' Motion for Relief from Order (ECF No. 83) will be granted, but only on the terms set out below.

## I. Procedural History

Plaintiff initiated this action in June of 2022. Plaintiff subsequently filed an amended complaint, and after some preliminary motions practice, Plaintiff filed her now-operative Second Amended Complaint in September 2022. Pursuant to the Court's Initial Case Management Order, the Parties were to complete ESI discovery related to "conditional certification" discovery on or before May 15, 2023, and Plaintiff's motion for conditional certification was due June 1, 2023. (ECF No. 37). Plaintiff timely filed her Motion on May 31, 2022. Defendants opposed this motion. In her Reply, Plaintiff accused Defendants of providing late and "woefully deficient" responses to its discovery requests. (ECF No. 47 at 3).

Oral argument on Plaintiff's Motion was held on November 1, 2023, during which Plaintiff orally moved for leave to supplement the record. The Court granted Plaintiff such leave and required the Parties to meet and confer about outstanding discovery disputes. (*See* ECF No. 59 ¶¶ 5-6). According to the Parties' status report, Defendants agreed to produce a list of Defendants' call center workers identifying each by name, job title, physical work location, and rate of pay. (ECF No. 59). By its Order on December 4, 2023, the Court resolved the sole pending discovery dispute and ordered Defendant to make additional disclosures. (ECF No. 60). These disclosures were due by December 20, 2023, or another date agreed to by the Parties. (ECF No. 60).

Nine days before these disclosures were due under this Court's Order, Defendants requested, and Plaintiff agreed to, another extension of that deadline until January 10, 2024. (ECF No. 93 ¶ 4). That deadline also came and went. The Court scheduled a status conference

for February 1, 2024, and at which the Defendants informed the Court that producing the information which the Court had ordered disclosed could require an additional six months. (ECF No. 65 ¶ 7).

Three weeks later, on February 20, after receiving a joint stipulation from the Parties, in light of the somewhat extraordinarily extended period of time that the Defendant said that it needed to produce what boiled down to what in the Court's experience would be rather "ordinary course" information about its own workforce, the Court, upon the Parties' joint request, tolled the statute of limitations "until Defendants provide full and complete documents and answers to Plaintiff's written discovery in accordance with the Parties' agreement referenced in their Joint Status Report (ECF No. 59) and the Court's Order compelling discovery (ECF No. 60)." (ECF No. 66). The Court's Order expressly provided that the "tolling implemented by this Order shall remain in full force and effect until ordered otherwise by the Court." (ECF No. 66). By this Order, the Court stopped the clock on the accrual of claims that could be involved in this case until the discovery matters that had been the subject of such discovery motions practice and this Court's Orders concluded. The clock remains stopped to this day.

On March 15, 2024, Defendants indicated to Plaintiff that they were going to be able to make a full and complete production by April 15, 2024. (ECF No. 68 ¶ 4). Following a status conference, the Court ordered Defendants to make its productions by that date. (ECF No. 73). This deadline, too, came and went.

The Court then extended the deadline until May 3, 2024. (ECF No. 74). On the final day of that yet again extended period, the Defendants filed a Notice indicating that it had provided compete productions. That was short lived. On that very same day, the Defendants filed a supplement stating that its productions were actually incomplete. (ECF Nos. 75-76). Defendants

indicated that they'd submit the missing information within the next week. (ECF No. 76). They didn't. On June 13, 2024, the Parties indicated that Defendants would produce the missing information within ten days of that filing. (ECF No. 78). Again, they didn't.

On August 23, 2024, more than eight months after the Court's initial deadline, Defendants finally complied with the Court's Order regarding discovery. With a very later arriving and new-found sense of urgency, Defendants immediately moved for relief from the Court's tolling order. The docket reflects that notwithstanding all of the Defendants' delay in completing their discovery work and their inability to comply with a multitude of this Court's orders, the Defendants were able to make *that* Motion on that very same day they provided the requested information about their own workforce.

On September 25, 2024, Plaintiff filed an Amended Motion for FLSA Conditional Collective Action Certification and Judicial Notice. Both Motions are now ripe for adjudication.

## II. Conditional Certification

"The FLSA establishes federal minimum-wage, maximum-hour, and overtime guarantees that cannot be modified by contract." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 69 (2013). The law requires wages to be calculated based on the actual time worked. *Sec'y, U.S. Dep't of Lab. v. E. Penn Mfg. Co.*, 123 F.4th 643, 649 (3d Cir. 2024). For certain violations, the FLSA empowers employees to bring a "collective action" on behalf of themselves and on behalf of other employees who are similarly situated. *Symczyk*, 569 U.S. at 69 (citing 29 U.S.C. § 216(b)). Unlike a class action under Federal Rule of Civil Procedure 23, an employee must opt-in to be joined to a collective action under section 216(b). *Camesi v. Univ. of Pittsburgh Med. Ctr.*, 729 F.3d 239, 242-43 (3d Cir. 2013).

Courts in the Third Circuit have adopted a two-step process for determining whether an action can proceed as a collective action. *Halle v. W. Penn Allegheny Health Sys. Inc.*, 842 F.3d 215, 224 (3d Cir. 2016). At the first step, often called "conditional certification," the district court makes a "preliminary determination as to whether the named plaintiffs have made a 'modest factual showing' that the employees identified in their complaint are 'similarly situated.'" *Camesi*, 729 F.3d at 243. To meet their burden, the plaintiff need only make a "'modest factual showing'—something beyond mere speculation—to demonstrate a factual nexus between the manner in which the employer's alleged policy affected him or her and the manner in which it affected the proposed collective action members." *Halle*, 842 F.3d at 224 (quoting *Zavala v. Wal Mart Stores Inc.*, 691 F.3d 527, 536 n.4 (3d Cir. 2012)); *see Dunkel v. Warrior Energy Servs., Inc.*, 304 F.R.D. 193, 200 (W.D. Pa. 2014) ("Plaintiffs must show three things: (1) an employer policy, (2) that affected the Plaintiffs in a particular way, and (3) that also affected other employees in a similar way."). The "sole consequence" of conditional certification is the dissemination of notice to potential collective action members, advising them of their ability to "opt in" to the litigation under the Fair Labor Standards Act and describing how they can do so. *Halle*, 842 F.3d at 224. "Conditional certification, therefore, is not a true certification, but rather an exercise of a district court's discretionary authority to oversee and facilitate the notice process." *Id.* At the second step, often called "decertification," the plaintiffs must prove by a preponderance of the evidence that the proposed collective action members are in fact "similarly situated." *Zavala*, 691 F.3d at 536-37.

The Parties agree that this case is at the "conditional certification" stage, and that the question before the Court is whether Plaintiff has made a "modest factual showing . . . to demonstrate a factual nexus between the manner in which the employer's alleged policy affected

him or her and the manner in which it affected the proposed collective action members." *Halle*, 842 F.3d at 224.[1]

**A. Hybrid and Remote Workers in Pennsylvania**

The Court concludes that Plaintiff has certainly made at least a "modest factual showing" that she is similarly situated to workers employed by Defendants who worked in a remote or hybrid position. Plaintiff's claims are straight-forward. She claims:

(1) She and other workers were required to be ready to take calls right at the start of their scheduled shift;
(2) She and other workers were not permitted to clock in until five minutes before the start of their shift;
(3) It took longer than five minutes—sometimes much longer—to get ready to take calls because of assorted technical issues; and
(4) Therefore, she and other workers were required to start working before they were permitted to punch in and were not compensated for this off-the-clock time.

Plaintiff marshals evidence for each contention. In support of the first, Plaintiff averred that she was "instructed numerous times" that she "had to be logged in and ready to take calls before clocking in at the start of [her] shift." (Plaintiff's Ex. 2 ¶ 6, ECF No. 87-2). Plaintiff provides screenshots of instant messages that she—and others—received instructing them to "be logged in ready to take calls at the start of your shift." (Plaintiff's Ex. 1 at 2, ECF No. 87-1). Plaintiff also provides emails sent by managers saying the same. (*See* Plaintiff's Ex. 3, ECF No. 87-3). These

[1] In earlier briefing, Defendants argued that the Court should apply a slightly more rigorous analysis because Plaintiff has received some discovery. Defendant does not repeat these arguments in its current briefing. Rather it appears to concede that the "modest factual showing" standard applies. (*See* ECF No. 95 at 11). But for the reasons noted below, that distinction would not be of consequence in this case.

emails, sent by at least three different managers, reached to approximately seventy-five workers. (*See* Plaintiff's Ex. 3, ECF No. 87-3).[2]

In support of the second point (i.e., workers could only punch in five minutes early), in addition to her own affidavit and instant messages that she received, Plaintiff provides emails from supervisors reaching around one hundred workers across seven states saying that workers could punch in only five minutes before the start of their shifts. (*See* Plaintiff's Ex. 4, ECF No. 87-4).[3]

In support of the third point (i.e., it often took more than five minutes to log in), Plaintiff avers that it often took her twenty to thirty minutes to get logged in. (Plaintiff's Ex. 2 ¶ 3, ECF No. 87-2). Plaintiff also provides evidence that others faced similar issues. She avers that she is aware of at least two other workers who experienced long load times, (Plaintiff's Ex. 2 ¶¶ 10-11, ECF No. 87-2), and she provides emails sent by other workers that state that the worker spent more than five minutes logging into the company systems before punching in, (*see* Plaintiff's Ex. 6 at 1, ECF No. 87-6 (PA remote employee telling manager it takes thirty minutes to get logged in); Plaintiff's Ex. 5 at 1, ECF No. 87-5 (OH remote saying that technical issues prevented her from logging in); Plaintiff's Ex. 5 at 4, 12, ECF No. 87-5 (NY remote employee saying that the punch in process takes ten minutes)). Further, Plaintiff provides additional evidence that technical issues were common. (*See* Plaintiff's Ex. 5 at 2, 7, 10-11, 14-24, ECF No. 87-5 (emails from multiple employees who had issues punching in)).

---

[2] Defendants do not dispute that their policy was to require employees to be ready to take calls at the start of their shift. (*See* ECF No. 95 at 8 ("Such communications are consistent with Defendants' written policy.")).

[3] Defendants do not dispute that this was their policy either. (*See* ECF No. 95 at 8-9).

And in support of the fourth point (i.e., workers were expected to get systems up and running on their own time), Plaintiff avers that she was required to log into the company software prior to clocking in (Plaintiff's Ex. 2 ¶ 5, ECF No. 87-2). She provides instant messages from her supervisors, including one that reads "START GETTING SYSTEMS STARTED 10-15 MINUTES BEFORE YOU START." (Plaintiff's Ex. 1 at 5, ECF No. 87-1). And Plaintiff provides emails from supervisors to other employees along the same line. (Plaintiff's Ex. 5 at 6, ECF No. 87-5 (email from supervisor to approximately twenty employees instructing that they needed to get their systems up and running before the start of the shift); Plaintiff's Ex. 6 at 4, ECF No. 87-6 (email from supervisor to approximately ten employees instructing that they needed to log in to certain systems before punching in); Plaintiff's Ex. 6 at 7, ECF No. 87-6 (email from supervisor to employee instructing employee to give herself fifteen minutes to get computer up and running)).

Considered as a whole, the record advanced by the Plaintiff more than easily meets the "modest" standard for notice certification, and in light of its detail, granularity, and documentation, Plaintiff's evidence would also meet the (slightly) more rigorous standard arguably applicable when there has been "some" discovery in an FLSA collective action case.

Defendants argue that the circumstances of putative collective action members are "substantially different and will require an inherently individualized analysis." (ECF No. 95 at 11). They complain that the technical issues encountered by Defendants' employees varied significantly: some experienced delays logging in, some were unable to turn their computers on, some faced delays clocking in, some forgot their passwords, some were able to log in but were delayed in accessing Defendants' call system. (ECF No. 95 at 12-13).

As an initial matter, Defendants' argument that individualized circumstances predominate is more appropriately addressed at the second stage of the certification process, when the Parties and the Court have access to more complete discovery and know more about the circumstances of the employees who have opted in. *See Burkhart-Deal v. Citifinancial, Inc.*, No. 07-1747, 2010 WL 457127, at *3 (W.D. Pa. Feb. 4, 2010) ("[A] defendant's claim or defense that individualized circumstances of employees render the matter unsuitable for collective treatment may be more appropriately reviewed during step two of the certification process."); *Weirbach v. Cellular Connection, LLC*, 478 F. Supp. 3d 544, 549 (E.D. Pa. 2020) ("The fact that determining alleged liability and damages in an off-the-clock case may prove fact-intensive or individualized does not weigh against conditional certification at this stage of the proceedings.").

Further, to the extent that Plaintiff offers evidence of technical issues other than those that she herself experienced, this does not undermine Plaintiff's argument that there are other similarly situated workers. Rather, this could actually serve as circumstantial evidence that technical issues like those experienced by Plaintiff were widespread. While a person who had trouble punching in might turn out to be not similarly situated to the Plaintiff (the Court does not decide that question now), the fact that many employees had issues with the punch in system suggests that employees faced similar issues getting the company's other software up and running, and therefore that other employees faced the same technical issues as Plaintiff.

With these observations in mind, the Court concludes that Plaintiff has done enough for conditional certification, at least with respect to hybrid and remote workers. While there do appear to be some differences between Plaintiff and some of the employees whose emails she references, Plaintiff's evidence is more than sufficient to meet the "fairly lenient" standard applied at the conditional certification stage. *Camesi*, 729 F.3d at 243. As discussed above,

Plaintiff has offered sufficient evidence—in the form of her own affidavit, screenshots of instant messages, and emails sent and received by scores of employees—that Defendants required employees to get their systems up and running before the start of scheduled shift, that employees could not punch in more than five minutes early, that it sometimes took Plaintiff and other employees far more than five minutes to get their systems up and running, and therefore that Plaintiff and other employees were not paid for all the time that they actually worked. This evidence is more than sufficient to make out a "modest factual showing" that there are similarly situated workers and, as noted above, would also meet the modestly more rigorous standard that some courts have applied to the "conditional certification" question when there has been some discovery.

**B. Out-of-State Workers**

The Court lacks personal jurisdiction over claims by out-of-state workers. In *Fischer v. Fed. Express Corp.*, 42 F.4th 366, 370 (3d Cir. 2022), the Third Circuit held as a matter of first impression:

> where the basis of personal jurisdiction in an FLSA collective action in a federal court is specific personal jurisdiction established by serving process according to Federal Rule of Civil Procedure 4(k)(1)(A), every plaintiff who seeks to opt in to the suit must demonstrate his or her claim arises out of or relates to the defendant's minimum contacts with the forum state. In this way, the specific personal jurisdiction analysis for an FLSA collective action in federal court operates the same as it would for an FLSA collective action, or any other traditional in personam suit, in state court.

Though Plaintiff disagrees with the Third Circuit's conclusion, Plaintiff concedes that this Court is bound by *Fischer* and must limit the scope of this collective action to Pennsylvania residents. (ECF No. 101 at 2). The Court agrees that *Fischer* controls the outcome as to this issue in this

case. Accordingly, the Court concludes that it lacks personal jurisdiction over claims by out-of-state workers and these workers must be excluded from this collective action.[4]

### C. Conditionally Certified Collective

For all the reasons discussed above, the Court conditionally certifies a collective action encompassing: "All current and former hybrid/remote workers employed in Pennsylvania by Capital Management Services, L.P. and Center One, LLC from February 20, 2021 to present who were not properly compensated for time spent logging in to the companies' systems prior to their shift."[5]

## III. Notice and Order

The question then becomes what form the Notice of Action should take. District courts have broad discretion in determining whether and how to provide notice to potential opt-in plaintiffs. *Sperling v. Hoffman-La-Roche Inc.*, 862 F.2d 439, 447 (3d Cir. 1988), *aff'd and remanded* 493 U.S. 165 (1989).

---

[4] Because the Court has concluded that it doesn't have personal jurisdiction as to out-of-state employees, it need not decide whether in-person workers are similarly situated to Plaintiff. From the Court's review of the filings, it appears that all in-person workers are located in New York. But even if the Court had jurisdiction over their claims, in-person workers would be properly excluded from the collective, as Plaintiff has not demonstrated that these workers are similarly situated. Plaintiff's only evidence regarding in-person workers is a single email from an in-person worker who was unable to clock in because her computer froze, and she then got started on other work. (Plaintiff's Ex. 7, ECF No. 87-7). For two reasons, this is likely insufficient to demonstrate a "factual nexus between the manner in which the employer's alleged policy affected her, and the manner in which it affected other employees." *Symczyk*, 656 F.3d at 193. First, the in-person worker worked as a "Front Reception/Security." She wasn't harmed by the Defendant's policy that call-center workers needed load certain software prior to beginning their shift. And second, it's not clear that this employee went unpaid for the time she worked before which they were able to punch in.

[5] By using the words "to present," the Court does not intend to limit the collective to persons who are employed or have been employed by Defendants as of the date of this Order. Rather, the Court intends only to copy verbatim the language from Notice of Action to avoid confusion that might be caused by the use of inconsistent verbiage.

The Defendants also raise a handful of objections to Plaintiff's Proposed Notice and Order. First, Defendants request that the language of the proposed notice be modified to clarify that this suit concerns only compensable time under the FLSA. Driven by these concerns, Defendants request changes to the sections "Description of the Lawsuit" and "Here's How to Join the Suit." Exercising its discretion to manage the notice process, the Court concludes that these proposed changes would do more to confuse the potential plaintiffs than it would to accurately inform them. Accordingly, the Court rejects Defendants proposed changes in those regards. This said, the "Here's How to Join the Suit" section would benefit from providing more specificity about which employees are "similarly situated," and the Court has modified that section accordingly.[6]

For similar reasons, the Court also rejects Defendants' modifications to the section that begins "TO:" (ECF No. 95-3 at 1). That section should read as follows:

> Certain former and current hybrid/remote workers employed in Pennsylvania by Capital Management Services, L.P. and Center One, LLC from February 20, 2021 to present.

Second, Defendants request that the opt-in period be reduced to no more than 60 days. In the Court's experience, 60 days might ordinarily would be sufficient for potential plaintiffs to make an informed decision about whether to join the litigation without needless delaying this already protracted litigation. *See, e.g.*, Order, *Dunkel v. Superior Energy Servs. Inc.*, No. 13-0695 (W.D. Pa. Dec. 23, 2014), ECF No. 99 (60 days); Order, *Naicker v. Warrior Energy Servs., Inc.*, No. 14-1140 (W.D. Pa. Sept. 30, 2015), ECF No. 64 (60 days); Order, *Hunt v. McKesson Corp.*, No. 16-1834 (W.D. Pa. Sept. 24, 2018), ECF No. 126 (45 days); Order, *Stallard v. Fifth Third Bank*, No. 12-1092 (W.D. Pa. Mar. 12, 2014), ECF No. 97 (45 days). But, given that this case

[6] *See* Appendix to the Court's Order of this date.

been dragged out (and far out) while the Defendant searched its own records to gather information about its own employees and to make sure that those who might properly receive and consider the notice to be sent, the Court will set a 90-day notice period. As detailed more fully in the Court's Order of this date, opt-in plaintiffs will have 90 days from the date that Plaintiff's counsel mailed and emailed the Notice of Action and Opt-In form to potential opt-in plaintiffs, as identified in Plaintiff's counsel's Notice of Mailing.

Third, Defendants request that the language regarding Defendants' liability for fees be excluded from the Court's order. The Court agrees that it would be premature to order Defendants to pay expenses associated with notice given that there has been no ruling on the merits of the case. Accordingly, that language will not be include in the Court's Order, subject to that topic being revisited later in this case.

And finally, Defendants request the inclusion of language informing plaintiffs that they may be liable for some court costs. Exercising its discretion, the Court concludes that Defendants' proposed language concerning certain Court costs should be included. The purpose of providing notice is to afford potential plaintiffs with an opportunity to make an informed decision about whether to participate in the suit. *See Hoffman-La Roche v. Sperling*, 493 U.S. 165, 170 (1989). "Because of the real possibility that at least some opt-in Plaintiffs could be responsible for certain court costs," the Court concludes, in an exercise of its discretion, that goals of notice would be better served by including the Defendants' proposed language regarding court costs. *Dunkel*, 304 F.R.D. at 207.

**IV. Tolling**

Pursuant to this Court's Order at ECF No. 66, the statute of limitations has been actually and affirmatively tolled since February 20, 2024. By the terms of that Order, this tolling remains in full force and effect until the Court orders otherwise.

In light of this Court's resolution of Plaintiff's Amended Motion for Conditional Certification, Defendants' repeated failure to comply with this Court's orders, and Defendants' past inability to compile information about its employees in a timely fashion, the Court concludes that the correct course is for the tolling period ordered by the Court at ECF No. 66 to end coterminous with the end of the 90-day notice period. As the accompanying Order sets out in more detail, this 90-day period shall begin on the date that Plaintiffs send all of the Notices of Action to potential opt-in plaintiffs, as confirmed in their Notice of Mailing that they will be responsible for filing on the docket.

To the extent that Plaintiff requests that the Court go beyond that express tolling of the statute of limitations and then also equitably toll the statute of limitations, the Court agrees with Defendants that doing so at this point is not warranted. At this point, no opt-in plaintiffs have joined this action. To determine whether equitable tolling applies, the Court would have to determine, in advance, that the claims of certain opt-in plaintiffs would not be barred by the statute of limitations due to equitable principles. At present, there are no opt-in plaintiffs at all, let alone opt-in plaintiffs whose claims are asserted to be time-barred by the statute of limitations even considering the period "tolled" by this Court's affirmative tolling order. It is possible that such plaintiffs will never join the action. Accordingly, applying equitable tolling now would be asking this Court to "advis[e] what the law would be upon a hypothetical state of facts." *In re Lazy Days' RV Ctr. Inc.*, 724 F.3d 418, 421 (3d Cir. 2013) (quoting *Chafin v. Chafin*, 568 U.S.

165, 172 (2013)). In other words, Plaintiff would be requesting an advisory opinion on the circumstances of as yet unknown and undefined opt-in plaintiffs and their circumstances. The Court is not in a position to do that. *Id.*; *see Ojeda v. Louis Berger Grp. (Domestic), Inc.*, No. 18-17233, 2020 WL 5757805, at *2 (D.N.J. Sept. 28, 2020).

The Court will grant Defendants' request that the tolling of the statute of limitations for opt-in plaintiffs be terminated, but only on the terms as set out above.

**V. Conclusion**

For the reasons discussed in this Opinion, Plaintiff's Amended Motion for Conditional Certification will be granted in part and denied in part as set out above, and Defendants' Motion for Relief from Order will be granted on the terms set out above.

An appropriate Order will issue.

s/ Mark R. Hornak
Mark R. Hornak
Chief United States District Judge

Dated: January 31, 2025